# In the matter of PETER BOLLIG, *ex parte.*

## APPLICATION FOR HABEAS CORPUS.

1. IMPRISONMENT—*magistrate—collection of fines.* The town council of the town of Princeton, in Bureau county, has the power, under the charter of the town, granted by act of the General Assembly, approved February 18, 1857, to provide by ordinance, that any person who may be guilty of the breach of an ordinance prohibiting the traffic in liquors, shall, "upon conviction, forfeit and pay to the said town of Princeton, the sum of twenty-five dollars for each and every offense, *and be imprisoned in the county jail of said county, until the fine and costs be paid.*"

2. Such a provision is not to be understood as denouncing *imprisonment* as the *punishment;* power is given thereby to assess a *fine only,* on conviction. The *imprisonment* is but a mode provided for collecting the fine and costs.

3.  It is not essential to the power to imprison in such case, that there should first have issued a *fieri facias*, and an effort made in that way to satisfy the fine out of the goods of the defendant; but he may be imprisoned at once, upon his refusal to pay the fine and costs.

4.  If the offender is unable to pay, he may get relief under an equitable construction of section 195 of the criminal code.

5.  IMPRISONMENT—*police magistrate—jurisdiction.* The police magistrate of the town of Princeton is no more than a justice of the peace, and would have no jurisdiction of an offense the punishment for which is imprisonment; it would be within the prohibition of the tenth section of article thirteen of the constitution.

6.  But where the punishment denounced is a fine, and the incidental power of imprisonment is only given as a means of enforcing that punishment—as a mode provided for collecting the fine—such case is not within the constitutional prohibition mentioned.

THIS was an application to this court by Peter Bollig, for a writ of *habeas corpus.*

It was represented in the petition, that Bollig was then imprisoned and detained in the county jail of Bureau county, by one Silas Battey, (who was, at the time, sheriff of said county and keeper of the jail), without any legal authority, under color of a certain pretended commitment, issued by one George O. Ide, a justice of the peace of said county.

The following history of the proceedings upon which the commitment was issued, will show the grounds of this application.

The town of Princeton, in Bureau county, became incorporated under a charter granted by act of the General Assembly, approved February 18, 1857. Subsequently thereto, on the 23rd of February, 1863, the town council of the town of Princeton passed an ordinance relating to brandy, rum, gin, whisky, etc., the second section of which was as follows:

"Any person who shall sell, barter or exchange ale, porter, beer, wine, brandy, rum, gin, or whisky, or any other spirituous, vinous, malt, fermented, mixed, or intoxicating liquors, or any mixture, part of which is any of said liquors, within the corporate limits of said town, or within one mile thereof, except as hereinafter provided; or who shall, upon the sale,

6

barter or exchange of any goods, chattels, wares, merchandise, property, *chose in action*, or upon any promise, contract or agreement, expressed or implied, except as hereinafter provided, deliver or furnish, or cause to be delivered or furnished, or knowingly suffer to be taken or received, any brandy, rum, gin, whisky, ale, porter, beer or wine, or any other spirituous, vinous, malt, fermented, mixed, or intoxicating liquors, or any mixture, part of which is any of said liquors, shall be considered and adjudged to be guilty of a nuisance, and every such person shall, upon conviction thereof, forfeit and pay to the said town of Princeton, the sum of twenty-five dollars, for each and every offense, and be imprisoned in the county jail of said county, until the fine and costs be paid."

The third section of the same ordinance, was as follows:

" The giving away by any person or persons, within the corporate limits of said town, or within one mile thereof, of any of the aforesaid liquors, with a view to evade any of said penalties provided in said second section, or if any person or persons shall suffer any other person or persons to drink any of said liquors in any public room, house, or place, occupied by him, her or them, he, she or they so offending, shall be considered and adjudged to be guilty of a nuisance, and be punished with fine and imprisonment as is provided in said second section."

Bollig was charged with a violation of the second section of the ordinance above cited, and a trial being had before the police magistrate of the town of Princeton, and a jury, a verdict was returned as follows:

" We, the jury, find Peter Bollig, the defendant, guilty of violating section two of an ordinance of said town, relating to brandy, rum, gin, whisky, ale, porter, beer, etc., passed February 23, 1863, in having sold beer; and assess the fine at twenty-five dollars."

In pursuance of the verdict, the police magistrate entered the following judgment:

" It is therefore considered and determined by me, that said plaintiff, the Town of Princeton, have and recover of the said defendant, Peter Bollig, for its demand, and the violation

of said section two, the sum of twenty-five dollars, the fine aforesaid, assessed by said jury, and also costs of suit herein, taxed at $23.37. And it is considered and directed by me, that in case said defendant, Peter Bollig, shall fail or refuse to pay said fine and costs so adjudged against him, that he, said defendant, be committed to the county jail of Bureau county, Illinois, until said fine and costs shall be paid, or otherwise discharged by process of law."

The police magistrate who rendered the foregoing judgment, afterwards issued a process, directed to the town constable, town marshal, or any policeman of said town, or any constable of said county, which recited the proceedings hereinbefore set forth, and concluded with the following direction:

"We therefore command you to demand of said Peter Bollig the amount of said fine and costs; and in case said Peter Bollig shall fail or refuse to pay the same, then you are to take the said Peter Bollig, and convey him to the county jail of said county, and deliver him into the custody of the keeper of said jail; and you, the said keeper, in such case, are hereby required to receive the said Peter Bollig into your custody in said jail, and him there safely keep, pursuant to the provisions of section three of article seven of the charter, and of an ordinance of said town, entitled 'An ordinance relating to imprisonment in the county jail,' until said fine and costs shall be paid, or otherwise discharged by process of law."

"Given under my hand and seal," etc.

This process coming to the hands of the town constable, he indorsed thereon the manner in which he had executed the same, as follows:

"Demand having been made by me of the within named defendant, for the within debt or fine, and costs, and he having refused to pay said amount, I have taken the body of the within named defendant, Peter Bollig, and have delivered him to the keeper of the county jail of said county,".etc.

The sheriff of the county entered the following indorsement upon the process:

"Received into my custody, in the county jail of Bureau

county, State of Illinois, in Princeton, this 21st day of April, 1863, at half past ten o'clock P. M., the within named defendant, who is delivered to me, and by me received, pursuant to the directions of the within writ.

(Signed)      ."SILAS BATTEY, Keeper."

The petitioner alleged that the process above referred to was the only final process which was issued upon said judgment, and that he is still detained and imprisoned in the county jail of Bureau county, under color of the said pretended commitment.

The petitioner also claims that the said judgment and process are illegal and void, and that he is wrongfully confined by reason thereof; and therefore he applies for a writ of *habeas corpus.*

Mr. GEORGE L. PADDOCK, for the applicant.

1.   This imprisonment is either by way of *punishment* for the offense alleged to have been committed, or it is by way of *process* to enforce the payment of the fine assessed.

It is insisted that in this case the imprisonment is the *punishment* for the offense, which the police magistrate, who is no more than a justice of the peace, has no power to enforce, under the prohibition in the tenth section of article thirteen of the constitution of this State.   *Paris* v. *The People,* 27 Ill. 76; 17 Ill. 163, and 339; 25 Ill. 84; Paley on Convictions, p. 271.

2.   But even regarding the imprisonment as a means of coercing payment of the fine, the commitment was wrong, and the prisoner should be discharged; for, where the imprisonment is merely subsidiary to enforcing payment of the fine, the magistrate cannot legally commit, until he has ascertained the want of sufficient goods to answer the penalty; which should have been done by the issuing and return of an execution against the goods of the party convicted.   Paley on Convictions, 272; *Hill* v. *Bateman,* 2 Strange R. 710.

Mr. JUSTICE BREESE delivered the opinion of the Court.

This is an application for a *habeas corpus*, in which the petitioner alleges that he is imprisoned and detained in the jail of Bureau county, by the sheriff of that county, without any legal authority, under color of a pretended commitment issued by a justice of the peace of that county. From the proofs exhibited, it appears the petitioner was duly prosecuted and convicted before the police magistrate of Princeton, in the county of Bureau, of a violation of section two of an ordinance of that town relating to brandy, rum, gin, whisky, beer, etc., adopted February 23, 1863. This ordinance provides, among other things, by section two, that if any person shall sell, barter or exchange ale, porter, beer, etc., within the corporate limits of the town, or within one mile thereof, he shall be considered and adjudged guilty of a nuisance, and every such person shall, upon conviction thereof, forfeit and pay to the town, the sum of twenty-five dollars for each and every offense, and be imprisoned in the county jail until the fine and costs are paid.

The first question arising in this case is, had the town council of the town of Princeton power to pass this ordinance?

The charter of the town was granted by an act of the General Assembly, approved February 18, 1857, and is declared a public act. Session Laws 1857, page 1415. By clause six of article four, the town council has power to make regulations to secure the general health of the inhabitants; to declare what shall be a nuisance, and to prevent and remove the same. By clause nineteen, to tax, restrain, prohibit and suppress tippling houses, dram shops, gambling houses, etc., within the town and within five miles thereof, but not to license any house or place for the sale of intoxicating drinks of any kind as a beverage. By clause thirty-one, to regulate the police of the town; to impose fines and forfeitures and penalties for the breach of any ordinance, and to provide for the recovery of such fines and forfeitures, and the enforcement of such penalties. By clause thirty-three, to prevent

and prohibit the introduction, keeping, manufacturing or selling of any vinous, malt, spirituous, mixed or intoxicating liquors within the town, and within five miles thereof, except for chemical, medicinal and mechanical purposes, etc. By clause thirty-four, to make all ordinances which shall be necessary and proper for carrying into *expiration* (operation) the powers specified in the act, so that such ordinances be not repugnant to nor inconsistent with the constitution of the United States or of this State.

By clause three of article seven, the town council has power to provide for the punishment of offenders against the ordinances of the town, by imprisonment in the county jail not exceeding thirty days for any one offense, and in all cases where such offenders shall fail or refuse to pay the fines, forfeitures and costs which may be *recorded* (recovered) or adjudged against them; *and* it shall be competent for the magistrate or other court before whom the same shall be tried, to direct that such offenders shall be committed to the county jail until such fines, forfeitures and costs shall be paid or otherwise discharged by due process of law. Page 1423.

Wrong punctuation, by placing a semi-colon after the word "them," with the insertion of the conjunction "and," which we have underscored, makes a bad sentence. By omitting them, the sentence is made intelligible, and expresses the meaning of the legislature, which is, that if the convicted party shall fail or refuse to pay the fine, etc., it shall be competent for the magistrate to direct that he be committed to the county jail, until, etc.

Ample power is given by the charter, it appears, to pass the ordinance in question. It is in conformity to the power conferred in all respects.

The counsel for the petitioner takes the ground that this imprisonment so authorized, is punishment — that it is a part of the judgment, and that it was the intent of the ordinance to create an offense punishable with imprisonment and fine.

In support of this view, reference is made to the third section of the ordinance which declares a certain offense to be a nuisance, and to be punished by fine and imprisonment "as

is provided in said second section." It is quite probable the town council, in enacting this ordinance, may have had more enlarged views of their powers than their real extent would justify. When that section comes before us for examination, such a construction will be put upon it, as the words used, and the object of the enactment will warrant.

Upon the hypothesis that the second section denounces punishment by imprisonment on a conviction for its breach, it is correctly said, the police magistrate had no jurisdiction of the offense, for such magistrate is no more than a justice of the peace (*In the matter of James Welsh, ex parte*, 17 Ill. 161), and is within the prohibition of the tenth section of article thirteen of the constitution of the State. That article, in the proviso, declares emphatically, that justices of the peace shall try no person except as a court of inquiry, for any offense punishable with imprisonment or death, or fine above one hundred dollars. Scates' Comp. 73. But does this ordinance denounce imprisonment on conviction? We do not so understand it. Power is given to the magistrate to assess a fine only, on conviction. The language is, "shall forfeit and pay the sum of twenty-five dollars." This is the whole extent of the punishment, the assessment of a fine. The imprisonment, though connected in the sentence by the copulative conjunction "and," is but a mode provided for collecting the fine and costs. It is incident to the power to fine, and cannot, in our judgment, be regarded in the light of punishment. Paley on Convictions, 271. The constitution never designed to abridge the modes usually resorted to, and most generally pursued, to carry out the powers with which justices of the peace are vested. They have power to try a case and assess a fine on conviction, if the fine does not exceed one hundred dollars. Of this there is no dispute. To collect this fine, and the costs accruing upon the trial of the cause, the magistrate, in very many cases, would be powerless without the power to hold the offender until he paid them or was discharged in some other mode. The fine and costs in this case were the principal thing, and over which the magistrate had ample jurisdiction. The provision of the constitution was

designed to inhibit a justice of the peace from the trial of any case where imprisonment was denounced by the law as punishment in the first instance on conviction. That class of offenses is a large and important one, and there was great propriety in excluding them from the cognizance of justices of the peace. Not so, where a fine is the punishment, and which may be paid on the instant.

To meet that large class of cases arising from breaches of town ordinances and such like, where a fine is the only penalty, the offenders are not, usually, willing to wait until a *fi. fa.* can be issued and returned. A summary mode of dealing with them, is indispensable to the safety of society and the preservation of good order, and it is no hardship upon them, if they are unwilling to pay the fine aforesaid, that the ordinary means should be used to compel them to pay. If the offender is unable to pay, he may get relief under an equitable construction of section 195 of the criminal code ; or if he cannot thus, then by some action of the town council, who would, doubtless, desire to relieve the town from the charge of his maintenance in prison after the expiration of a reasonable term of imprisonment. As we look at the case, the imprisonment is but an incident of the fine. This court has said, a justice of the peace, in fining a party for a contempt, may direct him to be imprisoned until the fine and costs are paid. *Brown* v. *The People*, 19 Ill. 613. The principle is, inasmuch as the justice has power to fine, he has all the power necessary to make the granted power effectual, by imprisoning the offender until the fine shall be paid. The imprisonment, as in this case, is only a consequence of the power to fine.

The writ must be refused.　　*Habeas corpus refused.*